# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DEMONT ALLEN,

               Plaintiff,          CIVIL ACTION NO. 16-cv-11291

        v.                  DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Demont Allen seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to Social Security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 13). Plaintiff filed a Response (docket no. 16) to Defendant's Motion. The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.      RECOMMENDATION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment [11] be **DENIED** and Defendant's Motion for Summary Judgment [13] be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 10, 2013, alleging that he has been disabled since August 9, 2012, due to his physical and mental impairments.  (TR 26, 173, 180.)  The Social Security Administration denied Plaintiff's claims on December 5, 2013, and Plaintiff requested a *de novo* hearing.  (TR 26, 118, 122, 129.)  On September 3, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Oksana Xenos.  (TR 46–85.)  In an October 27, 2014, decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 40–41.)  The Appeals Council declined to review the ALJ's decision (TR 1–5), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.  (Docket nos. 11, 13.) Plaintiff then filed a Response (docket no. 16) to Defendant's Motion.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Defendant sets out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.  (Docket no. 13 at 6–16.)  Plaintiff also includes a short statement of the facts (docket no. 11 at 6–7), and the ALJ discusses Plaintiff's medical record and hearing testimony throughout her decision (TR 23–42).  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned incorporates the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 9, 2012; and that Plaintiff suffered from the following severe impairments: spine disorder, diabetes, neuropathy, and depression. (TR 28.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 29.) The ALJ then found that Plaintiff's allegations regarding the extent of his symptoms were "less than fully credible" (TR 39) and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant is limited to simple, routine work with minimal changes in the work setting; cannot climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can frequently handle and finger; can occasionally reach overhead; should avoid hazards, such as moving machinery and unprotected heights; and needs to alternate between sitting and standing at will at the workstation.

(TR 30.) Subsequently, in reliance on the Vocational Expert's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy, including bench assembler, inspector, and surveillance systems monitor. (TR 41.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from October 4, 2008, through the date of the decision. (TR 41.)

## V.  LAW AND ANALYSIS

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper

legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

4

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

## C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  The court can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have

been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff asserts that the ALJ's decision should be reversed under sentence four and that Plaintiff should be awarded benefits. (Docket no. 11 at 18.) He argues that the ALJ "committed error at Step 3 . . . by discounting the importance of the treating physician's reports and opinions, by ignoring the significance of the second surgery"[1] and by concluding that Plaintiff's impairments did not meet all of the elements of Listing 1.04A, disorders of the spine. (Docket no. 11 at 5.) Plaintiff also argues in passing that the ALJ erred in her assessment of Plaintiff's credibility (*id.* at 6, 17), and that the ALJ failed to accommodate Plaintiff's mental limitations in formulating Plaintiff's RFC (*id.* at 14–17).

> 1. *The ALJ's Step 3 Analysis*

> A. *The ALJ's Assessment of the Medical Opinion Evidence*

First, Plaintiff argues that the ALJ "committed error at Step 3 of the five step sequential analysis by discounting the importance of the treating physician's reports and opinions." (Docket no. 11 at 5.) The only opinion Plaintiff identifies as having been improperly discounted is the following note, dated August 4, 2014, from one of Plaintiff's treating physicians, Dr. Joseph Skoney, MD:

> To Whom it May Concern:

> It is my pleasure to be Demont Allen's internist where he has been under my care for severe right cervical radiculopathy since 7-20-2012. He has been off work since 8-9-2012 to present and is [sic] undergone a C6-C7 ACDF spinal effusion with Dr. Montgomery on 2-15-2013 and cervical spine surgery revision on 4-8-2014. This letter is to confirm that the patient is unable to work since that time and his return to work date is February 30th, 2015 [sic]. He continues to have

---

[1] As mentioned in Dr. Skoney's note, below, Dr. David Montgomery, an orthopedic surgeon, performed a cervical fusion on Plaintiff on February 15, 2013 (TR 284), and a second cervical fusion on April 8, 2014 (TR 426).

severe pain in his neck with radiation down the right arm and is currently receiving Norco and Flexeril and has just recently started Neurontin.

(TR 428.)

The ALJ found that Dr. Skoney's opinion "is not well supported by the objective and other substantial evidence of record, particularly noting that Dr. Skoney is a primary care physician with no apparent specialization in orthopedic medicine premised in the record." (TR 37.) The ALJ considered the "length, frequency, nature, and extent of the treating relationship," but noted that after Plaintiff's first surgery in 2013, Plaintiff's surgeon, Dr. Montgomery, found that Plaintiff had "remarkably improved." (*Id.*) Dr. Montgomery also specifically cleared Plaintiff to work with "NO limitations on: 9/10/2013." (TR 37, 284.) As a result, the ALJ gave Dr. Skoney's opinion that Plaintiff was unable to work from February 2013 through February 2015 "limited weight." (TR 37.)

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No.

11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires her ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ properly discounted Dr. Skoney's opinion that Plaintiff was unable to work, as this issue is reserved to the Commissioner, not the treating or examining physician. *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008.) Moreover, as the ALJ explained, Plaintiff's orthopedic surgeon, Dr. Montgomery, specifically cleared Plaintiff for work - at his former job at Chrysler, which required substantial heavy lifting - during a period of time in which Dr. Skoney claimed that Plaintiff was disabled. (TR 37, 284.) Dr. Montgomery never provided a different, updated opinion which supported Dr. Skoney's regarding Plaintiff's ability to work, even after Plaintiff's second surgery. Moreover, it is proper for the ALJ to consider the fact that Dr. Skoney lacked specialization in orthopedic medicine when discounting Dr. Skoney's opinion. The undersigned finds no error with the ALJ's assessment of Dr. Skoney's opinion regarding Plaintiff's ability to work.

Dr. Skoney also opined that Plaintiff continues to experience severe pain with radiation. The ALJ clearly took Plaintiff's pain into account in formulating Plaintiff's RFC by limiting Plaintiff to sedentary work with a sit/stand option (*see* TR 38–39); and Plaintiff does not explain or present any argument concerning how the ALJ's treatment of that particular opinion of Dr. Skoney rendered the ALJ's Step 3 analysis erroneous. This argument should be rejected.

Plaintiff also appears to take issue with the fact that the ALJ assigned "great weight" to the opinion of the state agency consultative examiner, Dr. Harold Nims, D.O. (TR 36; docket no. 11 at 14.) Dr. Nims opined that Plaintiff was moderately impaired in "work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects," but that Plaintiff was nevertheless "capable of nonstrenuous tasks performed in a strictly sedentary type setting." (TR 415.) The ALJ found that Dr. Nims's report "constitutes a thorough recitation of clinical findings, such that it is entitled to great

weight." (TR 36.) Plaintiff notes that Dr. Nims only examined Plaintiff once, and furthermore that Dr. Nims is a family practitioner. (Docket no. 11 at 14.) Nevertheless, the ALJ was entitled to give great weight to Dr. Nims's opinions regarding Plaintiff's functional limitations in the absence of any such opinions from Plaintiff's treating physicians. *See Tamer v. Comm'r of Soc. Sec.*, No. 13-CV-13011, 2014 WL 3687140, at *10 (E.D. Mich. July 24, 2014) ("[T]he ALJ properly afforded significant weight to the only available medical opinion regarding Plaintiff's functional limitations.") Again, Dr. Skoney's "work notes," do not constitute an opinion regarding Plaintiff's functional limitations. While the state agency non-examining medical consultant Shahida Mohiudda, M.D., also gave an opinion regarding Plaintiff's functional limitations and ultimately concluded that Plaintiff could perform light work, the ALJ only gave this opinion "limited weight," because the ALJ found Plaintiff was more limited than Dr. Mohiudda had opined and because Dr. Mohiudda's opinion was rendered prior to Plaintiff's second surgery. (TR 37.)

The undersigned finds no error with the ALJ's weighing of the opinion evidence. She properly discounted the opinion of Dr. Skoney, giving good reasons, and credited the opinion of Dr. Nims. Therefore, Plaintiff's Motion should be denied in this regard.

### B.     *The ALJ's consideration of Plaintiff's second surgery*

Plaintiff next argues that the ALJ erred in Step 3 by "ignoring the significance of the necessity of the second surgery." (Docket no. 11 at 5.) Plaintiff is incorrect. The ALJ acknowledges the second surgery, performed by Dr. Montgomery, several times in her opinion. In particular, she discusses post-operative notes which provide that Plaintiff's "post-op wound is normal in appearance" and that the symptoms on Plaintiff's neck, shoulders, and arms were "improving," but that there was a "nonunion of fracture" which necessitated the prescription of a

cervical bone growth stimulator.  (TR 423, 425.)  Plaintiff may be correct that the second surgery evidenced the continuing seriousness of his medical conditions, even after his condition improved remarkably after the first surgery.  Nevertheless, the fact that Plaintiff underwent a second surgery does not indicate that Plaintiff meets any of the listings the ALJ discussed in Step 3; nor does it indicate that Plaintiff has any greater restrictions than those the ALJ assessed in Step 4.

Moreover, contrary to Plaintiff's assertion, the ALJ did not err in finding that Plaintiff had "no significant longitudinal treatment history" from September 25, 2013 (approximately seven months after the first surgery) through April 8, 2014, when Dr. Montgomery performed the second surgery.  Plaintiff argues that "the record stated otherwise," but then doesn't cite any treatment Plaintiff received during this time period.  (Docket no. 11 at 9.)  Instead, Plaintiff cites his own allegation that, five months after the second surgery, he was still recovering.  (*Id.*)  The relevance of this point to Plaintiff's argument is not entirely clear; regardless, Plaintiff is incorrect in asserting error with the ALJ's description of Plaintiff's treatment (or lack thereof) between surgeries.

### C.     Listing 1.04A

Plaintiff's last Step 3 argument concerns the ALJ's findings regarding Disability Listing 1.04A.

At Step 3, the ALJ considered Listings 1.04 (disorders of the spine); 11.14 (peripheral neuropathy); 9.00 (endocrine disorders); and 12.04 (depressive, bipolar and related disorders), and determined that Plaintiff did not meet the requirements of any of these relevant listings.  (TR 29–30.)  Plaintiff alleges no error with the ALJ's determination regarding listing 9.00, 11.14 or 12.04.  He does, however, argue that "the evidence actually compels the conclusion that

[Plaintiff] met the requirements" of Listing 1.04A. (Docket no. 16 at 5.) He explains that "[c]learly the evidence of nerve root compression as shown on [a 2012] EMG, the osteophyte complex (read herniated disc) as well as the [Dr.] Skoney exam findings show[] that Allen's condition met the requirements" of Listing 1.04A. (*Id.* at 3.)

A claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christophore v. Comm'r of Soc. Sec.*, No. 11013547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 653 (6th Cir. 2009). "Moreover, all of the criteria must be met concurrently for a period of twelve continuous months." *McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, at *8 (E.D. Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation")). It is the claimant's burden to demonstrate that he meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Under Listing 1.04A, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

> resulting in compromise of a nerve root (including the cauda equine) or the spinal cord.  With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy associated with muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.

With regard to Listing 1.04, the ALJ explained: "The spine disorder does not meet or medically equal listing 1.04 because the claimant lacks the requisite motor and sensory deficits . . . ." [2]  (TR 29.)  Plaintiff's arguments regarding his herniated disc and nerve root compression therefore miss the mark, as these conditions do not necessarily indicate motor, sensory or reflex loss, which are required for Listing 1.04A.  Indeed, elsewhere in her opinion, the ALJ notes that in October 2012, Plaintiff had "generalized right upper extremity weakness *without focal motor deficit*."  (TR 33.)  A November 2012 exam, which the ALJ also discusses, revealed "good strength, sensation, and reflexes."  (*Id.*)  A June 2013 exam also "revealed no motor deficit."  (TR 34.)  Finally, a November 2013 exam with the state agency consultative examining physician showed "no deficits as to muscle strength, sensation, and reflexes."  (TR 36.)

Plaintiff does not challenge any of the ALJ's observations regarding the results of these exams, nor does he point to any evidence in the record showing that he had motor, sensory or

---

[2] The ALJ also noted that there was "no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication," which are required for Listing 1.04B, and 1.04C, respectively.  (TR 29; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.)  Plaintiff only challenges the ALJ's finding with regard to Listing 1.04A; however, the undersigned finds no error with the ALJ's findings regarding 1.04B and 1.04C.

reflex deficits. The ALJ's determination regarding Listing 1.04A is supported by substantial evidence, and it must be affirmed. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). Plaintiff's Motion should be denied with regard to this issue.

The undersigned notes that Plaintiff briefly argues that the ALJ "failed to adequately explain why she concluded that Allen suffered from - as she characterized, a generic 'spine disorder' and 'neuropathy,' rather than a *herniated cervical disc and associated radiculopathy*," and notes that "the 'spine disorder' lasted more than twelve months and required two surgeries." (Docket no. 11 at 8.) Plaintiff fails to explain why the ALJ's use of these terms constitutes reversible error. Moreover, the ALJ discusses Plaintiff's radiculopathy diagnosis several times in her decision, and mentions the herniated disc at least twice, along with several other specific spine-related conditions. (*See, e.g.*, TR 33, 34.) It is clear that the ALJ was aware of Plaintiff's specific spine conditions, even if she did not label them as such in her Step 3 analysis.

In sum, the ALJ's Step 3 determination is supported by a reasonably clear explanation and substantial evidence of record. Plaintiff's Motion should be denied with regard to each of his Step 3 arguments.

### 2. *The ALJ's Credibility Assessment*

Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[3] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994) (applying these factors). Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-

---

[3] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *see also Murphy v. Comm'r*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

Plaintiff stated in his disability application paperwork that he was unable to work because of his cervical radiculopathy, neck injury, severe nerve damage, diabetes, and severe depression. (TR 206.) He testified that he is unable to sit or stand for more than five minutes, and that he is unable to lift anything more than a glass of water because his arms shake and he loses feeling in them. (TR 53.) He further testified that he is unable to drive because the nerves in his legs shake. (TR 54.) The ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR 39.)

Plaintiff argues:

The ALJ's adverse credibility determination is not supported in the record[.] The ALJ accepted that [Plaintiff's] "impairments could reasonably be expected to cause the alleged symptoms[,"] but failed to detail why she rejected Allen's testimony about his physical and emotional limitations.

Allen's testimony corroborates his credibility. Allen continued to see his primary care physician (Skoney) to address his ongoing complaints. He didn't return to Montgomery until the pain became so intractable. When it did, it was apparent that further surgery was needed.

The ALJ cites as an example of Allen's lack of credibility his discussion of cigarette smoking. [Dkt 8-2, Pg 66¶4] He testified to two cigarettes daily rather than to one to three packs in the past. This inconsistency does not rise to the level of substantial support for discounting all of Allen's testimony.

(Docket no. 11 at 17.) Plaintiff's arguments fail.

Contrary to Plaintiff's assertion, the ALJ does give additional reasons to discount Plaintiff's credibility beyond the inconsistency concerning Plaintiff's daily cigarette habit. The ALJ notes that Plaintiff testified and reported to the state agency examiner that physical therapy

was not beneficial; but he "reported significant functional improvement to the treating physical therapists." (TR 40 (citing TR 316, 319).) "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5.

An additional reason the ALJ gives for discounting Plaintiff's credibility is the fact that "the record reflects no significant longitudinal treatment history for more than six months, other than for development by this Administration, from September 25, 2013, through April 8, 2014." (TR 40.) As discussed above, Plaintiff claims that the record "stated otherwise" (docket no. 11 at 9), but then fails to provide any citations to the record indicating when Plaintiff sought treatment during this time and from whom. An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 374186, at *7.

The ALJ also discusses Plaintiff's activities of daily living, noting that these include "housekeeping tasks (*e.g.*, sweeping, washing dishes), simple meal preparation, paying bills and handling accounts, and computer use." (TR 40.) While Plaintiff is correct that these activities alone do not necessarily establish that Plaintiff is capable of full-time work, his ability to perform these activities weighs against the credibility of his claim that he is totally unable to lift objects heavier than a glass of water, or that he is unable to sit or stand for longer than five minutes at a time. The ALJ also notes that Plaintiff "sat throughout the nearly one-hour hearing without any visible signs of discomfort." (TR 40.)

In sum, the ALJ properly cited to the evidence in the record that explains his reasons for finding Plaintiff's statements regarding the extent of her disability to be not entirely credible, in accordance with her duty under SSR 96-7p. Thus, the ALJ's decision is sufficiently specific to

make clear to Plaintiff and to the court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed. Plaintiff's Motion should be denied in this regard.

### 3. The ALJ's assessment of Plaintiff's RFC

Plaintiff argues that the ALJ failed to adequately account for Plaintiff's "inability to concentrate for lengthy periods of time as reported by [Plaintiff's] fiancée," when formulating Plaintiff's RFC and in her hypothetical question to the Vocational Expert. (Docket no. 11 at 16.) He argues that the ALJ should have included "at the very least limitations in pace, speed and concentration." (*Id.*)

Here, the ALJ did find that Plaintiff has moderate difficulties in concentration, persistence or pace, in reliance on the adult function reports from Plaintiff and his fiancée, and in reliance on the Mental Residual Functional Capacity Assessment completed by the state agency psychological consultant, Larry Irey, Ph.D., the latter of which the ALJ assigned "significant weight." (TR 36.) The ALJ's hypothetical question to the VE included a limitation of "simple routine work with only minimal changes in the work setting" (TR 73) and in her decision, the ALJ wrote:

> Due to depression and physical discomfort, the claimant has a moderate impairment in the ability to sustain extended concentration, persistence, or pace, such that he is limited to simple, routine work with minimal changes in the work setting. The evidence establishes symptomatology associated with the claimant's mental impairment to include depressed mood, difficulty concentrating, irritability, and anxiety . . . . On October 19, 2012, review of systems was negative for depression and concentration problems . . . . Notably, the record reflects no significant longitudinal mental health treatment history beyond an initial psychiatric evaluation and two psychotherapy sessions in September 2013. . . . The undersigned finds that further reduction of the residual functional capacity is unwarranted premised upon this record.

(TR 39 (internal citations omitted).)  It is clear from this paragraph, and from the ALJ's question to the VE, that the ALJ considered and accommodated Plaintiff's mental limitations, including those related to Plaintiff's ability to sustain concentration for an extended period of time.

Plaintiff's fiancée, Pauline Ciesielski, wrote that Plaintiff "lose[s] his train of thought sometimes" due to his pain medication, and further that his medication affects "his talking, memory, concentration and understanding."  (TR 202.)  She also reported that Plaintiff "would need to constantly reference" written instructions in order to be able to follow them, and that a person giving spoken instructions "may have to repeat themselves," and finally that Plaintiff's ability to pay attention "varies – based on when meds were taken."  (*Id.*)  Plaintiff wrote in his function report that he is "having trouble trying to concentrate and it hurts to be this way."  (TR 223.)  In response to the question, "[f]or how long can you pay attention?" Plaintiff answered, "[n]ot long have to be pushed or asked over if I heard."  (TR 221.)

Dr. Irey, whose opinion the ALJ gave "significant" weight, found that despite Plaintiff's limitations in concentration, persistence and pace, Plaintiff was "capable of performing simple tasks in jobs that do not require a fast paced production quota."  (TR 99.)  The only other medical evidence of record concerning Plaintiff's mental health is a September 2013 psychiatric evaluation form completed by Janice McCrary, MA, LPC.  She indicated that Plaintiff had a "normal" memory and orientation, that his general knowledge was "consistent with [his] education," and that he had no attention, concentration or comprehension disorders.  (TR 337.)

Moderate limitations in concentration, persistence, and pace do not necessarily preclude "simple, routine unskilled work."  *See Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a

rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace.").

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation. "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions." *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted). Courts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion that found similar moderate deficiencies and indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)).

Here, the ALJ did not make an independent decision regarding Plaintiff's ability to maintain concentration, persistence, or pace. In fact, as explained above, the ALJ relied in part upon the opinion of Dr. Irey, in making such a determination. As discussed above, although Dr. Irey found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, he nevertheless opined that Plaintiff was able to perform "simple tasks in jobs that do not require a fast paced production quota." (TR 99.) The ALJ discussed and assigned significant weight to Dr. Irey's opinion, and incorporated the limitations assessed by Dr. Irey into Plaintiff's RFC, with the exception of the limitation concerning fast paced production quotas. The ALJ also included a limitation for jobs that have "minimal changes in the work setting," finding that "further reduction of the residual functional capacity is unwarranted." (TR 39.) The

undersigned finds no error in the ALJ's decision not to incorporate a limitation on production quotas, as an ALJ is not required to adopt all of a non-examining source's findings, even if the ALJ gives the opinion great weight. *See Smith v. Comm'r of Soc. Sec.*, Case No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."). The only other medical opinion evidence in the record – from Ms. McCrary – indicated that Plaintiff was alert, and had no problems with memory, concentration, or comprehension. Moreover, the ALJ properly discounted Plaintiff's credibility, as discussed above, and was therefore not required to fully credit his claims regarding his mental limitations. The undersigned further notes that neither Plaintiff's nor his fiancée's function reports indicate any specific functional limitation that the ALJ failed to incorporate.

There is no error here on the part of the ALJ, as the ALJ appropriately accommodated for Plaintiff's limitations in concentration, persistence, or pace in the RFC and the hypothetical question to the VE. It is therefore recommended that Plaintiff's Motion for Summary Judgment on this issue be denied.

## VI.    CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 13) be **GRANTED**.

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 2, 2017                        s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 2, 2017                        s/ Lisa C. Bartlett_____
                                          Case Manager